# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**ACCESS FOR THE DISABLED, INC.**
**and PATRICIA KENNEDY,**

    **Plaintiffs,**

**v.**                                                                                          **Case No. 8:11-cv-2342-T-30EAJ**

**FIRST RESORT, INC.,**

    **Defendant.**
_____/

## ORDER

Plaintiffs bring this action under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq,* and seek only injunctive relief. The Court conducted a non-jury trial in this action on September 24, 2012, and September 25, 2012. Having carefully considered the testimony and evidence presented at trial, and for the reasons set forth below, the Court now enters the following Findings of Fact and Conclusions of Law in accordance with its obligations under Rule 52 of the Federal Rules of Civil Procedure.

### I. FINDINGS OF FACT

**A.     The Parties**

    1.     Defendant First Resort, Inc. owns Siesta Inn and Suites ("Siesta Inn"), located at 2302 1st St. East, Bradenton, FL 34208. There is no dispute that Siesta Inn is a public accommodation as defined under the ADA.

    2.     Siesta Inn has 98 total rooms, 4 of which are handicapped accessible.

3.     Plaintiff Patricia Kennedy suffered a spinal injury and uses a wheelchair. She is not permanently bound to her wheelchair. For example, she can stand for five minutes at a time, walk several yards with the use of a cane, walk at home with the use of two canes, write with a pen, pour water from a pitcher, and drive a car. Kennedy does not need to use a roll in shower at home; she uses a bench seat. Kennedy teaches guitar.

4.     Kennedy lives in Broward County, Florida. She is a member of Plaintiff Access for the Disabled, Inc.

5.     Kennedy testified that on June 6, 2011, she attempted to stay one night at Siesta Inn. Kennedy was accompanied by Pete Lowell, who is Plaintiffs' ADA expert in this case. When Kennedy checked into her room, she noticed various ADA violations which served as barriers. Kennedy also noticed that the hotel's parking spaces, curb approaches, ramps, accommodations (like tables and counter tops), and restrooms were inaccessible and/or non-compliant. Lowell took photographs of the barriers at that time.

6.     Kennedy testified she left Siesta Inn approximately thirty minutes after she checked in because she was unable to stay in the room due to barriers to her handicap. Kennedy "did not know why she would not return" to Siesta Inn if the barriers were removed because she enjoys the area's shopping and beaches.

7.     Siesta Inn is not near shopping or beaches.

8.     Kennedy does not have any friends located near Siesta Inn.

9.     Broward County is more than 200 miles from the Bradenton/Sarasota area.

10. Kennedy was traveling with Lowell on ADA-related business the day she visited Siesta Inn.

11. On direct, Kennedy testified that she visited the Bradenton/Sarasota area as frequently as one time a month. On cross, Kennedy admitted that she had not visited the area for several years, other than for ADA-related purposes.

12. Plaintiffs filed the instant action without first contacting Siesta Inn about the barriers to her handicap.

13. After reviewing Plaintiffs' complaint in this case, Siesta Inn was uncertain about what Plaintiffs were specifically complaining with respect to the alleged barriers.

14. On January 6, 2012, Lowell conducted a Rule 34 inspection of Siesta Inn. Lowell provided a list of the ADA violations in his export report dated January 6, 2012.

15. Lowell testified that he charged Plaintiffs' attorneys for the preparation of his expert report but that he did not know if he would charge for his testimony at trial. Lowell testified that whether he decided to charge for his testimony at trial might depend on who won the case.[1]

---

[1] Notably, a contingency fee agreement between Lowell and Plaintiffs' attorneys is a clear violation of Rule 4–3.4(b) of the Florida Bar Rules of Professional Conduct, which states that a lawyer "shall not" "fabricate evidence, counsel or assist a witness to testify falsely, or offer an inducement to a witness, except a lawyer may pay a witness reasonable expenses incurred by the witness in attending or testifying at proceedings; a reasonable, *noncontingent fee for professional services of an expert witness*". (emphasis added). This accords with "[t]he common law rule in most jurisdictions . . . that it is improper to pay an expert witness a contingent fee." *Id.*, cmt. The Court could strike Lowell's testimony based on this ethical violation, but will opt not to do so because of its conclusion that Plaintiffs lack standing and Plaintiffs' claims are moot.

16.     Siesta Inn hired a contractor with specific knowledge of ADA-related barriers to bring the hotel in compliance with the ADA as specified in Lowell's report.

**B.      Barriers Discussed in Lowell's Expert Report and Siesta Inn's Modifications**

<u>**Roll in shower**</u>

Siesta Inn must have four handicapped accessible rooms, one of which must have a roll in shower, which Siesta Inn does not have.  According to Lowell's expert report, converting a regular room to accommodate a roll in shower will require removal of a bath tub, installing proper plumbing fixtures, and installing the proper, moving electrical wire switches and outlets.  It will also require tile work and moving existing drains and supply lines and installing proper grab bars.  According to the report, it will cost Siesta Inn approximately $15,000 to construct a roll in shower.

Siesta Inn, through its representative Yovall Augoshe, who is the President and sole stockholder of First Resort, Inc., testified that the roll in shower was not readily achievable due to the costs associated with the construction.  Siesta Inn would have to close down a room on each side during the construction due to the construction noise.  It costs approximately $50 to rent a room at the Siesta Inn and it would take approximately one year in gross rentals from one room to recoup the costs associated with the construction. Siesta Inn's net income since 2003 has been: $(-42,915) in 2004; $37,370 in 2005; $(-217,115) in 2006; $(-3,409) in 2007; $(-58,978) in 2008; $(-113,356) in 2009; $(-72,906) in 2010; and $(-61,529) in 2011.  Siesta Inn has been unable to pay its full mortgage payments during the

past several years and is currently paying them at a reduced amount based on a negative amortization schedule.

### Shower and Toilet Area

Both the shower and the toilet are required to have grab bars that are of a specific size and location. Plaintiffs' expert report indicated that the grab bar behind the toilet was 24 inches, not the required 36 inches, and there was no grab bar on the side. The grab bars on the side wall of the bath tub should be two parallel bars. Also, the tub should have a secure shower seat.

The photographs of the tub and toilet area contained in the report are only partially pictured and the toilet area is not a clear focus of the picture. Notably, figure 30 of the expert report is a diagram of a toilet stall, not water closet. The expert report did not discuss the fact that the toilet in the handicapped accessible rooms did not contain a side wall on which a side grab bar could be affixed.

Siesta Inn installed all of the required grab bars in the tub area. It also provided a secure seat in the tub in one of the rooms and made one available for each of the other three rooms if requested by a handicapped patron. Siesta Inn also affixed a rear toilet grab bar of the required length. Augoshe testified that Siesta Inn did not install a grab bar on the side of the toilet because this area does not have a side wall on which to place a side bar and the diagram in figure 30 indicated toilet stalls, not water closets as found in motel rooms. Augoshe also testified that he did not think a grab bar on the side of the toilet was recommended, given the report's failure to address the fact that there was no wall on the side.

Siesta Inn added grab bars on the side of the toilet in its lobby toilet stall.

### Plumbing Fixtures

According to the report, the plumbing fixtures did not comply with the ADA because the shower heads are out of reach and the faucets have knobs that require tight grasping and twisting. The ADA requires a hand held shower head with a 60 inch hose.

Siesta Inn replaced the shower head with the hand held hose device specified in the report and levered the faucet handles, so that they did not have to be tightly grasped and twisted.

### Door Handles and Locks

The report indicated that the door handles and locks were noncompliant because they are mounted at 60 inches above the floor and the peep-holes were mounted incorrectly. The iron in room 186 was mounted at the wrong height.

Siesta Inn lowered the height of the locks to 40 inches above the floor. Siesta Inn also moved the peepholes to the appropriate height and lowered the irons in the rooms to a height no greater than 54 inches.

### Tables in the Rooms

The report indicated that the tables in the rooms measured 14 inches from the edge of the table to the center post not allowing a person in a wheelchair to roll under the table sufficiently.

Siesta Inn bought new tables that met the ADA guidelines of 19 inches of knee clearance.

### **Bedroom Furniture**

The report indicated that the accessible path of travel between the bed and the furniture was 32 inches. The ADA requires 36 inches of clearance.

Siesta Inn bought new, narrower dressers, which allowed for at least 36 inches of clearance. Siesta Inn also posted a policy reminding its cleaning staff to leave furniture against the wall, so as not to impair the clearance.

### **Lobby Area**

The report indicated that the floor rug located at the entrance to the hotel was not secured to the floor in violation of the ADA.

Siesta Inn secured the rug to the floor.

### **Lobby Restrooms**

The report indicated that the restrooms in the hotel lobby provided grab bars that were not the appropriate length.

Siesta Inn installed the proper grab bars as indicated in the report.

The report indicated that the toilet flush handle and the toilet paper dispensers were positioned in a way that made it difficult for someone with a disability to use, violating the ADA.

Siesta Inn relocated the toilet paper dispensers and fixed the handles as indicated in the report.

### Laundry Facility

The report indicated that the laundry facility sold products from a machine with its controls mounted at 57 inches exceeding the reach limits as required under the ADA.

Siesta Inn lowered the vending machines so that the controls did not exceed 54 inches.

### Parking

The report indicated that the three handicapped accessible parking spaces did not have an access aisle as required under the ADA. The report also indicated that the signs were not located high enough and that the spaces should be placed near the handicapped rooms.

Siesta Inn repainted the spaces, so that they included an adjacent access aisle, and raised the height of the signs, so that they were more visible and unable to be blocked by a van or other vehicle parked in that space. Siesta Inn also increased its three handicapped accessible parking spaces to six spaces, and placed two of the spaces in the front near the office and four near the handicapped rooms.

The report also contained a picture of a lack of a ramp, but did not specifically recommend a ramp, however Siesta Inn cured this issue by building a ramp.

C. **Barriers Kennedy Discovered During Reinspection and Siesta Inn's Modifications**

Kennedy testified that during her reinspection of the premises, she complained that the pipes under the sink in the guest room were not covered and that they were a hazard to a person's legs if they were in a wheelchair. Augoshe testified that the contractor subsequently covered the pipes.

Kennedy testified that during her reinspection she complained to Siesta Inn that the towel rack on the wall above the toilet was too tall. Siesta Inn lowered the towel rack. Kennedy then testified for the first time after inspecting pictures of the modifications that the towel rack was too low and that she could hit her head on it, based on its closer proximity to the grab bar. These alleged violations were never mentioned to Siesta Inn prior to her testimony. Also, the Court finds that, even if there was a violation, it was not experienced by Kennedy, who can stand on her own without the use of her wheelchair.

Kennedy also testified that the lobby counter was too high. After she complained to Siesta Inn regarding this issue, it added a handicap accessible table adjacent to the lobby counter.

Kennedy testified that the new tables in the rooms blocked the lamp. Augoshe testified that the lamp was accessible via a switch on the wall, thus there was no barrier.

Kennedy testified that the shower diverter knob was a pull fixture as opposed to a lever. The Court finds that Siesta Inn was never placed on notice of this alleged barrier and therefore had no obligation to fix it. The Court also finds that this alleged barrier did not discriminate against Kennedy because she would be able to pull the knob sufficiently. While she never tried to pull the shower diverter, she was able to use her hands to write with a pen, play guitar, and pour water from a pitcher.

Finally, Kennedy testified that the ramp Siesta Inn built in the parking area was made of asphalt, which tends to crumble and create granules that might impair wheelchair access.

The Court finds that this alleged barrier is merely speculative about the ramps' future state of repair.

## II. CONCLUSIONS OF LAW

**A.     The ADA**

A plaintiff alleging Title III ADA discrimination must initially prove that (1) she is a disabled individual; (2) the defendant owns, leases, or operates a place of public accommodation; and (3) the defendant discriminated against the plaintiff within the meaning of the ADA. *See Segal v. Rickey's Restaurant and Lounge, Inc.*, 2012 WL 2393769, at *7 (S.D. Fla. June 25, 2012). To meet the burden of proof in discrimination cases focused on pre-existing buildings, a plaintiff must present evidence of a barrier, the removal of which is "readily achievable." *See Gathright–Dietrich v. Atlanta Landmarks, Inc.,* 452 F.3d 1269, 1273 (11th Cir. 2006); *Access Now, Inc. v. S. Fla. Stadium Corp.,* 161 F. Supp. 2d 1357, 1362 (S.D. Fla. 2001) (discrimination includes "a private entity's failure to remove architectural barriers ... in existing facilities ... where such removal is readily achievable.") (internal quotation marks omitted); *see also* 42 U.S.C. § 12181(9) ("'[R]eadily achievable' means easily accomplishable and able to be carried out without much difficulty or expense."). If the plaintiff meets this burden, the defendant then bears the ultimate burden of persuasion that barrier removal is not "readily achievable." *Gathright–Dietrich,* 452 F.3d at 1273.

The Court concludes that Kennedy is disabled under the ADA.

**B.     Standing**

Article III grants federal courts judicial power to decide only cases and controversies. *Allen v. Wright,* 468 U.S. 737 (1984). The constitutionally minimum requirements for standing are: (1) the plaintiff must have suffered, or must face an imminent and not merely hypothetical prospect of suffering, an invasion of a legally protected interest resulting in a "concrete and particularized" injury; (2) the injury must have been caused by the defendant's complained-of actions; and (3) the plaintiff's injury or threat of injury must likely be redressed by a favorable court decision. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992). "Because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges ... a real and immediate-as opposed to a merely conjectural or hypothetical-threat of *future* injury." *Wooden v. Bd of Regents of Univ. Sys. of Georgia,* 247 F.3d 1262, 1284 (11th Cir. 2001) (emphasis in original). With respect to ADA cases, "courts have held that a plaintiff lacks standing to seek injunctive relief unless he alleges facts giving rise to an inference that he will suffer future discrimination by the defendant." *Shotz v. Cates,* 256 F.3d 1077, 1081 (11th Cir. 2001).

Kennedy does not have standing to complain about alleged barriers which are not related to her respective disabilities. *See Steger v. Franco,* 228 F.3d 889, 893 (8th Cir. 2000); *Ass'n for Disabled Americans, Inc. v. Concorde Gaming Corp.,* 158 F. Supp. 2d 1353 (S.D. Fla. 2001). Kennedy also does not have standing to complain about alleged barriers of which she was unaware at the filing of her complaint. *See Access Now, Inc. v. South*

*Florida Stadium Corp.,* 161 F. Supp. 2d 1357, 1365–66 (S.D. Fla. 2001); *Resnick v. Magical Cruise Co., Ltd.,* 148 F. Supp. 2d 1298, 1302 (M.D. Fla. 2001).

With respect to the barriers addressed above, the Court concludes that Kennedy does not have standing to argue any barrier with respect to the roll in shower because she testified that she did not need to use a roll in shower. Thus, Siesta Inn's failure to have one does not relate to her disability.

Kennedy also does not have standing with respect to any barriers related to the shower diverter and the towel rack above the toilet because she did not attempt to use these items during her stay and they also do not relate to her disability.

Finally, the Court concludes that Kennedy does not have standing to assert this action because the Court did not find her testimony credible[2] with respect to her desire to stay at Siesta Inn and her desire to return to the Siesta Inn in the future. Kennedy admitted that at the time she went to check in at Siesta Inn, she was traveling with Lowell, Plaintiffs' ADA expert, on ADA-related business. During the thirty-minute stay, Lowell took pictures of the alleged barriers. The Court concludes that Kennedy did not have a good faith intention to stay at Siesta Inn during this visit.

Kennedy admitted that she does not have any family or friends located near Siesta Inn. Siesta Inn is not particularly close to shopping or the beach. Although Kennedy initially

---

[2] Notably, although the Court concluded as a matter of law on summary judgment that Plaintiffs had standing, Plaintiffs still have the burden of proving their allegations of standing at trial before the Court will determine that Plaintiffs have standing to bring suit. At the summary judgment stage, the Court could not make a credibility finding; now, it can.

testified that she visited the area about once a month, she admitted that she had not visited the area for several years, other than for ADA-related purposes. Kennedy had never stayed at Siesta Inn previously. She also did not convince the Court that she had any intention to return to Siesta Inn after it was ADA-compliant. Kennedy's statement that she does not know why she would not revisit Siesta Inn is insufficient. Notably, Siesta Inn is located more than 200 miles from Kennedy's home, also making any future visit speculative.

In sum, Kennedy lacked the requisite concrete and specific intent to return to Siesta Inn other than "someday," which is insufficient. *See Rodriguez v. Investco, LLC,* 2004 WL 345857 (M.D. Fla. Feb. 24, 2004) (finding that plaintiff lacked a continuing connection to the defendant's facility, plaintiff's explanation for his first visit to the facility was disingenuous, and plaintiff did not convey any honest desire to return to the facility).

Having concluded that Kennedy lacked standing to bring this action, Access for the Disabled, Inc. also lacks standing because at least one of its members must have standing to sue in his or her own right. *See United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.,* 517 U.S. 544, 552-53 (1996).

**C.     Plaintiffs' Claims Are Moot**

Even if the Court concluded that Plaintiffs have standing in this case, Plaintiffs' claims are moot based on the Court's findings of fact as stated above because Siesta Inn remedied all of the barriers, other than the roll in shower and the side grab bar in the handicapped accessible rooms' toilet area, which the Court will now address further.

The Court already concluded that Plaintiffs do not have standing to bring any claim with respect to the roll in shower and need not repeat that analysis here. However, even if Plaintiffs had standing to assert this claim, Plaintiffs did not meet their burden in establishing that the roll in shower was readily achievable.

Removal of barriers is readily achievable if it is "easily accomplishable and able to be carried out without much difficulty or expense." 28 C.F.R. § 36.304(a). Title III of the ADA, seeking to balance the rights of disabled persons to access public accommodations free of discrimination with the costs defendants incur in altering facilities, requires only that a private entity "take remedial measures that are (a) effective, (b) practical, and (c) fiscally manageable." *Concorde Gaming Corp.,* 158 F. Supp. 2d at 1363.

Plaintiffs did not establish that the roll in shower was readily achievable because the evidence demonstrated that it could not be accomplished without much difficulty or expense, given Siesta Inn's declining financial condition and the fact that it would have to close down the adjoining rooms, in addition to the handicapped room, due to construction noise.

Similarly, Plaintiffs did not meet their burden with respect to the barriers associated with the failure to have a side grab bar in the toilet area. The expert report did not address the fact that the toilet area in the handicapped accessible rooms did not have a side wall to affix a side bar. Rather, it included a figure of a toilet stall, which is not relevant to the motel rooms. This failure did not place Siesta Inn on adequate notice of the alleged barrier. Indeed, Augoshe testified that the ADA contractor performed all of Lowell's recommended

modifications other than the roll in shower.[3] Augoshe stated that they were unaware that a side grab bar was needed in the toilet area of the handicapped accessible rooms because this area lacks a side wall and the referenced figure (figure 30) demonstrated a toilet stall, which did not apply.

**D.     Attorney's Fees and Costs**

The Court concludes that Plaintiffs are not entitled to attorney's fees and costs in this case because they are not a prevailing party, given their lack of standing, and the Court's conclusion that, even if they had standing, their claims are moot. *See Norkunas v. Seahorse NB, LLC*, 2011 WL 1988799, at *6 (M.D. Fla. May 23, 2011). In *Norkunas*, the court noted: "Although certain areas of the Seahorse were in violation of the ADA at the time the complaint was filed, the Court finds there are no proven continuing violations." *Id.* "Under Title III of the ADA plaintiffs 'cannot ... recover their attorney's fees for serving as a 'catalyst,' i.e., that they caused [defendant] to implement the changes they sought.'" *Id.* (citing *American Ass'n of People with Disabilities v. Harris,* 605 F.3d 1124, 1137 n. 26 (11th Cir. 2010); *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.,* 532 U.S. 598, 610 (2001)).

Here, irrespective of Plaintiffs' standing, there were no continuing ADA violations. Although Plaintiffs take issue with Siesta Inn's initial denial of their claims, the Court finds the testimony of Augoshe credible, when he stated that, initially, he did not understand the

---

[3] The Court ruled that Plaintiffs did not have standing to claim any barriers associated with the pool area.

scope of the claimed violations. After he received Lowell's expert report, he hired an ADA-compliant contractor to make the recommended modifications, other than those that were not readily achievable. There was also no credible testimony of any continuing violations.

### III. CONCLUSION

Similar to the plaintiff in *Seahorse*, Kennedy, an experienced ADA plaintiff, opted to sue Siesta Inn, rather than provide it with any notice of the barriers to her disability. In response to Lowell's expert report, Siesta Inn began to remedy the deficiencies. Although the Eleventh Circuit has held that pre-suit notice is not required for Title III ADA claims, *see Assoc. of Disabled Amer. v. Neptune Designs, Inc.*, 469 F.3d 1357, 1359-60 (11th Cir. 2006), had Kennedy provided Siesta Inn with a pre-suit notice, identifying the alleged barriers and providing it with ninety days or more to remedy the barriers, and Siesta Inn had not cured the issues during this period of time, Plaintiffs would have a more compelling argument that their claims were not mooted by Siesta Inn's subsequent post-suit modifications.

Plaintiffs opted to file the instant action, which began the "cat and mouse" game as described by the court in *Seahorse*, where Plaintiffs would identify a defect and Siesta Inn would subsequently fix it, which continued until the time of trial. The court in *Seahorse* noted: "presumably, this 'cat and mouse' game is due to the nature of the ADA (which provides only prospective injunctive relief for continuing violations) and the rejection of the 'catalyst' theory of attorneys' fees recovery, but there must be a better way to achieve ADA compliance." 2011 WL 1988799, at *7. The Court wholeheartedly agrees.

It is therefore **ORDERED and ADJUDGED** that:

1. The Clerk of Court shall enter judgment in favor of Defendant and against Plaintiffs.

2. The Clerk of Court shall close this case and terminate any pending motions as moot.

**DONE** and **ORDERED** in Tampa, Florida on September 28, 2012.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2011\11-cv-2342.findings.frm